IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF SOMERSET.

ARGUED AT JUNE TERM, 1844.

---

## REUEL WRIGHT *versus* HOWARD C. KEITH.

When an officer has a precept wherein he is commanded to arrest the body of an individual, he has the right to select such particular time of day as he thinks most expedient, under the circumstances, and is authorized to make use of so much force as is necessary to accomplish the object.

Where an officer has arrested a debtor on an execution, and committed him to prison, and returned several items of fees for his services, some of which are legal, and some illegal; and the debtor brings an action against the officer, alleging generally, that by reason of such illegal fees, he was detained in prison longer, than he otherwise would have been, but does not show that he has either paid, or offered to pay the debt, or the legal fees, but was discharged by taking the poor debtor's oath, such action cannot be maintained.

In an action against an officer for a false return, made by mistake, in certifying that he had left with the plaintiff a true copy of a notice to appear and submit to an examination, &c. that he might thereby prevent the issuing of an execution against his body, (under the poor debtor act of 1831,) when in fact there was an error in the copy; and the mistake was known to the present plaintiff in season to have avoided any inconvenience thereby, at a trifling expense; *it was held*, that the plaintiff was entitled to recover only such sum as would have fully paid him for ascertaining the truth, and not damages for the injury sustained by him in being arrested and imprisoned on the execution.

CASE against the defendant for misconduct as a deputy sheriff. The declaration contained three counts, the substance of which appears in the opinion of the Court.

One Gilman, on Aug. 19, 1833, recovered a judgment against the present plaintiff; and in order that an execution

might be obtained which should run against the body, as the law then was, (poor debtor act of March 31, 1831,) applied to a justice of the peace, who issued a citation to the now plaintiff to appear before two justices of the peace and of the quorum, "on the 28th day of September, A. D. 1833, at eleven of the clock in the forenoon, at the office of George Mason, in Canaan in said county, for the purposes in the foregoing application named." This notice was delivered by Gilman, the creditor, to Keith for service. He returned that he had left an attested copy of the notice at the dwellinghouse of Wright; and as the latter did not appear at the time and place to make his disclosure, an execution issued against his body. This execution was delivered to Keith, a deputy sheriff, for service, and he arrested the debtor, being the present plaintiff, and committed him to prison on the thirteenth day of December, 1833. The defendant returned as fees on said execution, "dollarage," travel, copy, expenses, and paid assistant, "in arresting Reuel Wright, he refusing to be arrested and carried to jail."

At the trial, before WHITMAN C. J. the plaintiff introduced his son, George P. Wright, as a witness, who testified, that he was at his father's house, when the defendant left the copy of the citation, and took it from the defendant, and carried it to his mother, who read it, and remarked, that it did not say where the plaintiff must go; that his father was then at Bangor, where he went in about a week, and his father came home with him; that he thought his father saw and knew of the citation soon afterwards and before Sept. 28, 1833; that he was present when the defendant came for his father on the execution; that it was then about dark, and his father objected to going that night, and wished to delay until next morning to see the creditor; that he said there was a mistake in the judgment, and his mother said there was an error in the copy of the citation left; that Keith replied he cared nothing about that, for he did his business right; that his father refused going that night, and Keith rapped on the window, and a large man

came in ; that his father dropped on the floor, and both seized him and carried him out ; that blood was visible from the door to the wagon, and the plaintiff's stocking was bloody ; that he could not tell, whether his father put his foot against the walls of the room, or was hurt in some other way on being carried out ; that the plaintiff made no resistance other than by dropping upon the floor ; and that the defendant used no language of a violent character. A daughter of the plaintiff gave a deposition to which she attached the copy, which she said was left by the defendant. It was a printed form, and the words " George Mason" and " Canaan," which appear in the citation, were omitted in the copy. It appeared that the plaintiff was discharged from jail by taking the poor debtor's oath on Jan. 21, 1834. The justice who signed the citation lived nine miles from the house of the plaintiff.

Upon that testimony the presiding Judge ruled, that the plaintiff was entitled to nothing more than compensation for going to the justice, to ascertain the place where the citation was returnable ; and that what he suffered beyond that was attributable to his omitting so to do.

Thereupon a default was entered by consent, estimating the damages at five dollars ; and it was agreed, that if the plaintiff was entitled to recover for any thing more than a fair compensation for going to the justice, and ascertaining when the hearing was to be, the default was to be taken off and the action stand for trial ; otherwise judgment was to be entered on the default.

*J. S. Abbott,* for the plaintiff, contended that the plaintiff had a right to presume, that the defendant would do his duty as an officer, and make a true return of his doings ; and that therefore the justices could not have proceeded, as no legal notice had been given. It was not the duty of the plaintiff to presume that the officer had made a false return, and travel off and seek means of ascertaining whether he had done so or not. He said, he could find no law requiring a man to run about the country, to ascertain where a precept against him was

made returnable; or that he was even bound to regard any information gratuitously bestowed, other than a legal service. This ruling, it was respectfully contended, was in direct conflict with the express requirements of law; that it would be full of danger in practice; that it would be ruinous to parties against whom precepts should issue; and would encourage carelessness and neglect of official duty.

But had the plaintiff gone to the justice who signed the citation, he would, probably, have been wholly unable to have afforded any information. He merely signed a paper, not returnable before himself and of which he kept no record, and could not be expected to remember the contents, if he ever knew them.

He also contended, that the plaintiff was entitled to damages, under the second and third counts. Some damages should be given, because the illegal taxation of fees made it more difficult to obtain his release from imprisonment, as a greater sum must have been paid to procure his release, than was lawfully due. The precept of the defendant afforded him no justification for the unnecessary and cruel violence with which the defendant was treated by him.

*Wells*, for the defendant, said that the plaintiff had never suffered the slightest injury by the taxation of the fees complained of. He had never paid them, nor the debt, and never would.

The plaintiff's witness, his own son, says that the plaintiff refused to submit himself to lawful authority, and threw himself upon the floor; and that the officer merely made use of sufficient force to comply with his duty, and obey his precept. Justice has been done by the verdict, and the Court will not disturb it. In fact, the second and third counts were practically abandoned at the trial, and forgotten.

The cause of complaint in the first count was a mere mistake of the officer, and was so considered by the plaintiff and his family at the time. If an intimation of the mistake had been made to the officer, he would have corrected it, or fur-

nished a new copy. And he might have ascertained from the justice who issued the citation, *the place*, the only error. His own children were his witnesses, and he did not intimate the slightest intention of making a disclosure. The citation in this and all other cases under that law was mere *matter* of form, as no one disclosed until the execution came. Now although the return be not exactly true, yet the officer making it is not liable to *any damages*, if the facts of the case, truly stated, would have produced the same result to the party complaining. *Smith* v. *Ford*, 1 Wend. 48. But if the action can be maintained, the injury and loss which the plaintiff actually sustained by the false return, are the only proper measure of damages. *Norton* v. *Valentine*, 15 Maine R. 36.

The opinion of the Court, Tenney J. taking no part in the decision, as he had once been counsel in the case, was drawn up by

Whitman C. J. — It is perceived, from the arguments of the plaintiff's counsel, that he insists on his right to recover upon his second and third counts. One of these is for wanton abuse and ill usage, at the time of the arrest on the execution ; the other for certifying, for his services on said execution, illegal fees, by reason of which, he alleges, that he was detained in prison for the space of forty days. But in the report of the case it does not appear, that either ground of complaint was insisted on at the trial. All that would seem to have been agitated on that occasion had reference to the falsity of the defendant's return of notice to the plaintiff, upon the citation in the first count set forth. It is true, nevertheless, that, by the declaration and pleadings, the other matters were, on the record, in issue between the parties ; but would seem to have been unnoticed by the Court ; and hence the ruling was manifestly without reference thereto.

We must now, however, consider whether the evidence, as reported, would have been deemed sufficient, in reference to either of those grounds, to have authorized a jury to have

returned a verdict for the plaintiff. If it would, a new trial must be granted.

We will consider, first, of the alleged wanton violence and ill usage. No question is made but that the precept, by virtue of which the defendant acted, was in due form, and issued by a competent tribunal. He, then, was bound to execute it. For want of goods and estate of the plaintiff, it commanded him to arrest his person. The particular moment of time when it should be done, anterior to the return day of the precept, was intrusted to the discretion of the defendant. He would be expected to select the moment when it could best be accomplished. Much precaution would be requisite in arresting some individuals; while, as to others, an officer would know that it could be done at any time, and without difficulty. The dwellings of some individuals must be approached stealthily for the purpose; and hence the evening would be selected, and aid also. The defendant, in making the arrest in question, made use of these precautions; with what propriety may be gathered from the conduct of the plaintiff, the evidence in reference to which comes from his son. The plaintiff objected to going with the defendant that evening; and insisted on a postponement till the next day. It was not for him to control the defendant in this particular. Yet, if the defendant had been without aid, it may, from what finally took place, well be doubted whether he would not have been compelled to desist. The moment it was discovered that aid was at hand, the plaintiff dropped upon the floor; and placed himself in a posture to require great exertion to move him. The son says, whether he braced his feet against the sides of the door or not, when in the act of being carried out, he could not tell; but that he traced blood from the door to the defendant's wagon; and saw some on the plaintiff's stocking; that no harsh language was used. This was all the evidence of violence; and from it there is not the slightest ground to find that more force was used, than was indispensable to accomplish the arrest.

Now, as to the detention for the space of forty days, by reason of the alleged return of illegal fees upon the commit-

ment, the burthen of proof was upon the plaintiff. It does not appear that he offered to pay, or would have paid either the fees, however correctly charged, or the debt. On the contrary, he took the poor debtor's oath, without doing either. Moreover, in his declaration he does not specify the item or items of illegal fees; nor does there appear to have been any attempt to do it at the trial. All the fees charged were not illegal; and if any of them were, they should have been particularly designated. The plaintiff is clearly without merits upon this point.

If the plaintiff can be considered as having established any legitimate cause of action, the foundation of it must be sought for in the falsity of the defendant's return on the citation, set forth in his first count. The citation itself was in due form; and it was the duty of the defendant to have left with the plaintiff a true copy of it; but, in making out the copy, he left out the designation of the place, where the examination was to take place. This was, it would seem, at most, but an inadvertency on the part of the defendant. There could have been no reason to suppose it could have been done from design; and it cannot be reasonable to believe that the plaintiff could have supposed it was done intentionally. He could not have been under a misapprehension as to the object of the citation; nor of the consequences of his inattention to it; and it would not seem that he had the slightest solicitude concerning it. It certainly does not appear that he exhibited any. It would rather seem that he of choice preferred to let the worst happen that could occur; and then seek a vindictive satisfaction of the defendant for the oversight he had accidentally committed. If this were not the case, how easy would it have been for him to have inquired of the defendant, or of the justice who issued the citation, and have ascertained the place appointed for the examination? This would, to be sure, have been of some inconvenience to him; and for this he would have been entitled to an adequate remuneration; and the sum, for which the defendant consented to be defaulted, was confessedly ample for that purpose.

But it is argued that he was under no obligation to make such inquiry; that he had a right to lie by, and let the worst come that could come, however remote from the cause, and however easy it might have been for him to have prevented it; and then hold the defendant responsible for the consequent injury. This certainly would not be in accordance with the duties incident to the social relations between man and man; and it is believed is not sanctioned by the prescribed rules of law. " In assessing damages the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative and contingent consequences, which the party injured might easily have avoided by his own act." *Loker* v. *Damon & al.* 17 Pick. 284. "If the party injured has it in his power to take measures, by which his loss may be less aggravated, this will be expected of him." And again; "if the party entitled to the benefit of a contract can protect himself from a loss, arising from a breach, at a trifling expense, or with reasonable exertions, he fails in social duty if he omits to do so." *Miller* v. *Mariners' Church,* 7 Greenl. 51. And in *Berry & al.* v. *Carle,* 3 *ib.* 269, which was trespass *de bonis asportatis,* the Court say, in relation to logs lodged on the original defendant's dam, "they could be removed only with as little injury as possible"; and the jury having found "that they could have been saved to the original plaintiff with little inconvenience to the original defendants," it was held that the verdict was properly returned for him. These *dicta* were uttered in reference to acts, which were voluntary and intentional, under a claim of right. With how much more force would they apply where the act complained of was evidently inadvertent, and which the individual, liable to be injured by it, must have apprehended to be so?

But there is much reason for doubt, whether the damages justly recoverable in this action, might not have been much less than the sum for which the defendant consented to be defaulted. It does not appear to have been alleged in the plaintiff's declaration, or to have been offered to be proved at the trial, that the plaintiff was in a condition, if he had ap-

peared before the justices, to have obtained a discharge from arrest in that case. If he was not, and we have a right to presume he was not, as it may be believed he would otherwise have averred and proved the fact, could he have been entitled to recover any thing more than mere nominal damages on account of the falsity of the return? The seeming indifference which he manifested, concerning the object of the citation, tends to fortify the presumption, either, that he was not in a condition to obtain a discharge, or that he was not disposed to make an exhibit of his affairs.

On the whole, we think judgment should be entered upon the default.